AO 106 (Rev. 04/010) Application for Search Warrant          AUTHORIZED AND APPROVED/DATE: s/Tiffany Edgmon 05/14/2024

# UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF OKLAHOMA

amg
5/14/24

In the Matter of the Search of Information )
ASSOCIATED WITH THE CELLULAR ) Case No: M-24-432-AMG
DEVICE ASSIGNED CALL NUMBER )
956-996-7617 IN THE CUSTODY OR )
CONTROL OF T-Mobile USA, Inc. )

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is (*check one or more*):
☒ evidence of the crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Attempted Coercion and Enticement of a Minor |
| 18 U.S.C. § 2423(b) | Interstate Travel with Intent to Engage in a Sexual Act with a Minor |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:

See attached Affidavit of Special Agent Andrea Salazar, Homeland Security Investigations, which is incorporated by reference herein.

☒ Continued on the attached sheet(s).
☐ Delayed notice of [No. of Days] days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
Applicant's signature

Andrea Salazar
Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence.

Date: 5/14/24

_____
Judge's signature

City and State: Oklahoma City, Oklahoma

AMANDA MAXFIELD GREEN, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 956-996-7617 IN THE CUSTODY OR CONTROL OF T-Mobile USA, Inc. | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Andrea Salazar, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 956-996-7617 (the **SUBJECT ACCOUNT**), that is stored at premises controlled by T-Mobile USA, Inc., a wireless communications service provider that accepts process at 4 Sylvan Way, Parspippany, NJ, 07054, to locate items described in Section II of Attachment B.

2.  The information to be searched is described in the following paragraphs and in **Attachment A**. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require electronic communications service providers to disclose to the government the information further described in Section I of **Attachment B**. Upon receipt of the information described

in Section I of **Attachment B**, government-authorized persons will review the information to locate the items described in Section II of **Attachment B**.

3. In sum, this affidavit is made in support of an application for four separate accounts associated with four separate devices and requests an order for historical cell site data for the **SUBJECT ACCOUNT**, pursuant to 18 U.S.C. § 2703(d).

4. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am currently employed as a Special Agent ("SA") with Homeland Security Investigations ("HSI") and have been so since July 2022. Prior, I was a federal police officer with Pentagon Force Protection Agency and had been so employed since August 2019. I hold a bachelor's degree in criminology and a Master of Public Administration from St. Mary's University. I also hold a Master of Science in Criminal Justice from Sam Houston State University.

5. I am currently assigned to HSI Office of the Resident Agent in Charge Oklahoma City, Oklahoma. As part of my various duties and responsibilities, I investigate federal criminal cybercrime violations. As it relates to cybercrime, I have gained experience conducting child exploitation and child pornography investigations. My working experience has been augmented by training I received at the Federal Law Enforcement Training Center. Moreover, I have access to the institutional knowledge developed around this type of investigation by working with other experienced child exploitation criminal investigators. I have become aware of numerous examples of child

pornography. Additionally, I have had the opportunity to observe and review hundreds of images and videos of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. § 2422(b) and 2423(b).

6.   I am investigating the online activities of Bryan Devin CRUZ. As explained herein, there is probable cause to believe CRUZ committed the following crimes: Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b); and Interstate Travel with Intent to Engage in a Sexual Act with a Minor, in violation of 18 U.S.C. § 2423(b).

7.   The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.   This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the locations specifically described in Attachment A of this Affidavit for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2422(b) (Coercion and Enticement of a Minor) and 18 U.S.C. § 2423(b) (Interstate Travel with Intent to Engage in a Sexual Act with a Minor). This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

9.   The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. §§ 2711 & 3127. Specifically, the Court

is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. §§ 2711(3)(A)(i) & 3127(2)(A)(i).

## PROBABLE CAUSE

10.     On or about April 5, 2024, Sergeant Spencer Sloan of the Moore Police Department ("MPD") was dispatched to 2816 Yorkshire Drive in Moore, Oklahoma, in the Western District of Oklahoma. A Moore resident, T.L., was reporting someone peeking into her thirteen-year-old daughter's ("Jane Doe") window.

11.     Upon his arrival, Sgt. Sloan deployed the department's drone that utilizes thermal imaging to survey the area for any possible suspects. Almost immediately, Sgt. Sloan located a heat signature in the backyard of 2813 Yorkshire Circle. Sgt. Sloan informed officers of his findings, and the subject began to move to the west. The subject continued westbound in the creek and hopped a fence into a backyard of a residence (2824 Kings Road). The subject then hopped into the backyard of 2820 Kings Road and then walked from the backyard to the front of the residence. The subject walked north until he was apprehended in front of 2824 Kings Rd. This was all recorded via the drone. MPD Officer Koalton R. Keller asked the subject to identify himself. The subject lied about his name and date of birth. Ultimately, the subject was identified as CRUZ. A red iPhone was located underneath a vehicle near CRUZ's location at the time of his arrest.

12.     Sgt. Sloan then made his way to T.L.'s residence and spoke to T.L. According to T.L., she confiscated Jane Doe's laptop. T.L. allowed Sgt. Sloan to view the laptop where he observed messages between Jane Doe ("T" on discord) and "Alex." The conversation contained a few days' worth of messages. Several messages were sexual in

nature. Jane Doe sent a photo to "Alex" depicting her vaginal area with the vagina covered with a hand. Sgt. Sloan confirmed the picture was sent by Jane Doe due to the red lights in the background that Jane Doe had in her room. Some of the messages were from "Alex" stating he wanted to use Jane Doe "like a toy.

13.  MPD Detective Ryan Minard spoke to T.L., who advised the laptop belonged to Jane Doe's father S.P. who lived at another residence. Contact was made with the father, who consented to a search of the laptop.

14.  Detective Minard observed on the discord app, on the laptop, that CRUZ was going by "Alex <3" as his username and Jane Doe was going by "T" as her username. CRUZ and Jane Doe communicated back and forth for several days. CRUZ made statements to Jane Doe about videos and pictures and how he knows Jane Doe has sent pictures to other people online. Jane Doe sent CRUZ a photograph of her while nude from the waist down. CRUZ asked Jane Doe to face the camera and spread her legs for him. CRUZ asked Jane Doe to call on discord and they had multiple conversations through discord.

15.  CRUZ and Jane Doe met online using an application called "Discord" to communicate. CRUZ advised Jane Doe that he went to Southmoore and Jane Doe stated she was completing online school. During the conversation, CRUZ asked Jane Doe how old she was, and she stated she was 13 years old about to turn 14. CRUZ advised back that her age was okay in the conversation.

16. CRUZ told Jane Doe he wanted to "smash"[1] and asked how they could meet up. Jane Doe also expressed a desire to run away. Jane Doe talked about the cameras that were at her dads' house and how mother had less cameras. Jane Doe also advised her older brother turned the cameras around at her mom's house.

17. CRUZ told Jane Doe that they could meet up outside of her residence. CRUZ then talked about how he can't wait to be inside Jane Doe and for her body to take the shape of his. CRUZ then talked about making plans to sneak into Jane Doe's window when her mother goes to sleep.

18. On April 6, 2024, CRUZ traveled from Texas to Jane Doe's residence. CRUZ asked Jane Doe when to come to the house. The two talked back and forth waiting for T.L. to go to bed. CRUZ asked Jane Doe which window was her window so not to go to the wrong one. In the chat, Jane Doe told CRUZ to come back after running away from the window and that not to worry because Jane Doe's mother thought it was "Chris." At that point in the conversation, T.L. contacted police and the resulting response began.

19. CRUZ was interviewed by Detective Minard. After his interview, CRUZ asked Detective Minard if he would be allowed to make any phone calls. Detective Minard stated CRUZ would be allowed to make phone calls if he could remember their phone numbers, to which CRUZ stated he could not. Detective Minard asked CRUZ for consent to open CRUZ's red iPhone but not go through it to help CRUZ get phone numbers out of

---

[1] Based on my training and experience, "smash" is a slang term meaning to have sex.

the phone. CRUZ agreed by stating, "yes." CRUZ also provided the passcode to the red iPhone, when asked.

20. On April 10, 2024, Detective Minard spoke to M.E., who identified herself as CRUZ's wife. She stated that they lived at 3524 Marwick Drive, Plano, Texas. She also informed Detective Minard that CRUZ had told her he was traveling to a friend's wedding in Texas.

21. On April 22, 2024, United States Magistrate Judge Shon T. Erwin authorized a search warrant for CRUZ's cell phone. On the phone, investigators located screenshots of sexually explicit conversations between CRUZ and Jane Doe. The screenshots were taken from CRUZ's Discord app. The phone number assigned to the red iPhone was the **SUBJECT ACCOUNT**.

22. Additionally, on the red iPhone, investigators located conversations between CRUZ and at least one other minor female on Discord. CRUZ discussed whether the minor female was interested in just meeting up with him or doing more than just meet up. The minor female responded she was only interested in meeting up with him, nothing more, because they just met. In essence, CRUZ's illicit conversations with Jane Doe were not an isolated event.

23. Through the use of law enforcement databases, it was discovered that on September 10, 2020, Dropbox LLC self-reported user doe00084@gmail.com/ESP, User ID: 3196730080, for uploading 19 images/videos of child pornography. One of the IP addresses associated with the CyberTip came back to Andrea Vilchis, CRUZ's girlfriend during that period of time. Two other IP addresses associated with the CyberTip were

traced back to Jorge Alvarez, CRUZ's roommate during that period of time. The resulting investigation did not lead to any criminal charges.

24. Based on the aforementioned, it is believed the **SUBJECT ACCOUNT** contains evidence relating to the travel and coercion caused by CRUZ via electronic communications to the minor victim, and possibly others. CRUZ's cell data will also corroborate statements made by minor victim that she communicated with CRUZ. Location data will show CRUZ traveled from Texas to Oklahoma on April 5, 2024.

25. In my training and experience, I have learned that T-Mobile USA, Inc. is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be ten (10) or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

26. Based on my training and experience, I know that T-Mobile USA, Inc. can collect cell-site data about the **SUBJECT ACCOUNT**. Based on my training and

experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; (5) the cell tower roundtrip network measurements from tower to device and back to tower, commonly referred to as Timing Advance data; and (6) the duration of the communication. I also know that wireless providers, such as T-Mobile USA, Inc., typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

27. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), an Integrated Circuit Card Identification ("ICCID") number, or an International Mobile Equipment Identity ("IMEI"). The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

28. Based on my training and experience, I know wireless providers, such as T-Mobile USA, Inc., typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers, such as T-Mobile USA, Inc., typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to prove intent. In my training and experience, this information may also constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT ACCOUNT**'s user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

29. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41, to capture certain information in **Attachment A** for each communication to or from the **SUBJECT ACCOUNT**.

30. As further specified in **Attachment B**, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or

any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

31. I further request that the Court direct T-Mobile USA, Inc. to disclose to the government any information described in Section I of **Attachment B** that is within its possession, custody, or control. Because the warrant will be served on T-Mobile USA, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*Andrea Salazar*
Andrea Salazar
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on May 14, 2024

*Amanda Maxfield Green*
AMANDA MAXFIELD GREEN
United States Magistrate Judge

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number 956-996-7617 (**SUBJECT ACCOUNT**), that is stored at premises controlled by T-Mobile USA, Inc., a wireless communications service provider that accepts process at 4 Sylvan Way, Parspippany, NJ 07054.

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the **SUBJECT ACCOUNT** listed in Attachment A for the time period January 1, 2024, through April 6, 2024:

a. The following information about the customers or subscribers of the **SUBJECT ACCOUNT**:

  i. Names (including subscriber names, user names, and screen names);

  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii. Local and long distance telephone connection records;

  iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v. Length of service (including start date) and types of service utilized;

  vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile

Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by CRUZ's phone, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 2422(b) (Coercion and Enticement of a Minor) and 18 U.S.C. § 2423(b) (Interstate Travel with Intent to Engage

in a Sexual Act with a Minor) involving Bryan Devin CRUZ, including location data and attribution information.

Law enforcement personnel, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control, are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.